# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | | |
|---|---|---|
| IBRAHIM BROWN, | ) | No. CV 14-6126-DDP (PLA) |
| Petitioner, | ) | |
| | ) | **FINAL REPORT AND RECOMMENDATION** |
| v. | ) | **OF UNITED STATES MAGISTRATE JUDGE** |
| JOHN KATAVICH, Warden, | ) | |
| Respondent. | ) | |

This Final Report and Recommendation is submitted to the Honorable Dean D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.  For the reasons discussed below, the Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be dismissed with prejudice.

/

/

/

/

/

# I.

## SUMMARY OF PROCEEDINGS

On March 6, 2012, petitioner pleaded no contest in Los Angeles County Superior Court case number KA094247 to one count of receiving stolen property (Cal. Penal Code § 496(a)). Petitioner also admitted a gang allegation within the meaning of California Penal Code § 186.22(b)(1)(A), that he suffered a serious or violent prior conviction for attempted residential burglary (Cal. Penal Code §§ 459, 664) in Riverside County Superior Court case number RIF103626, and that he had served a prior prison term within the meaning of California Penal Code § 667.5(b).  (RT 91-99; CT 113-38).  Pursuant to the plea agreement, petitioner was sentenced to twelve years in state prison.  (RT 99-100; CT 133-38).

Petitioner filed two appeals:  the first challenged the calculation of presentence custody credits (Lodgment No. 5); the second challenged the trial court's restitution order.  (Lodgment No. 6).  The California Court of Appeal modified the judgment to reflect additional custody credits and dismissed the restitution order, but affirmed the judgment in all other respects.  (Lodgment Nos. 9-11).  Petitioner filed a petition for review of the court of appeal's decision regarding the custody credits, which the California Supreme Court denied.  (Lodgment Nos. 12, 13).

On September 4, 2013, petitioner filed a habeas petition in the Los Angeles County Superior Court, which was denied in a reasoned decision on the merits.  (Lodgment Nos. 14, 15). Petitioner next filed a habeas petition in the California Court of Appeal, which issued a summary denial on February 4, 2014.  (Lodgment Nos. 16, 17).  On February 27, 2014, petitioner filed a habeas petition in the California Supreme Court, which issued a summary denial on May 14, 2014. (Lodgment Nos. 18, 19).  On May 5, 2014, petitioner filed a second petition in the California Supreme Court, which was denied on July 9, 2014, with a citation to In re Clark, 5 Cal.4th 750, 767-69 (1993).[1]  (Lodgment Nos. 20, 21).

On August 5, 2014, petitioner filed the instant Petition.  On February 20, 2015, respondent

---

[1]  The Clark citation stands for the rule that the court will not consider repetitious and piecemeal applications for habeas corpus.  Clark, 5 Cal.4th at 767-69.

filed an Answer and Return to the Petition.  On April 6, 2015, petitioner filed a Reply.  On July 24, 2015, petitioner filed a supplement to his Reply ("Supplemental Reply" or "Supp. Reply").

This matter is deemed submitted and is ready for a decision.

## II.

## PETITIONER'S CONTENTIONS

1.     Petitioner's trial counsel rendered ineffective assistance for failing to properly litigate petitioner's Fourth Amendment claim.  (Petition Attachment at 13-32).

2.     Appellate counsel was ineffective for failing to argue on appeal that petitioner was subjected to an unreasonable search and seizure and that trial counsel was ineffective as set forth in Ground One.  (Petition Attachment at 33-34).

3.     The superior court exceeded its jurisdiction in denying petitioner's habeas petition. (Petition Attachment at 35-43).

4.     The trial court committed _Apprendi_[2] error in sentencing petitioner.  (Petition Attachment at 44-50).

5.     Trial counsel rendered ineffective assistance "for failing to investigate all the facts and defenses . . . relevant to the charged offenses."  (Petition Attachment at 51-56).

6.     The superior court erred in denying petitioner's suppression motion.  (Petition Attachment at 57-67).

7.     Appellate counsel was ineffective for failing to raise on appeal the claims set forth in the Petition.  (Petition Attachment at 68-74).

## III.

## RELEVANT FACTS

Before petitioner entered his plea of no contest to one count of receiving stolen property, he filed a motion to suppress  evidence, arguing that the charge was based on an unlawful search

---

[2]     _Apprendi v. New Jersey_, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

1    and seizure.  The following facts are taken from the hearing on the motion to suppress:

2         On May 5, 2011, at around 2:00 p.m., Deputy Sheriff Ernie Esquibel of the Riverside County

3    Sheriff's Department conducted a vehicle stop of a Chevy Tahoe driven by petitioner.  (RT 13-14).

4    According to Deputy Esquibel, he pulled over the Tahoe because its front windows were tinted in

5    violation of the California Vehicle Code.[3]  (RT 14-15).  Deputy Esquibel asked petitioner and the

6    other two occupants, Winston Burke and Trajon Thomas, to exit.  (RT 14-16).  Deputy Esquibel

7    then realized that petitioner, Burke and Thomas were all documented gang members.  (RT 16).

8    When Deputy Esquibel approached the open door of the Tahoe to confirm that there were no other

9    individuals in the vehicle, he smelled marijuana.  (RT 16-17).  Deputy Esquibel asked petitioner

10   if there was anything illegal in the vehicle and asked for permission to conduct a search.  (RT 17).

11   Petitioner responded that "there shouldn't be" anything illegal inside the Tahoe and refused to

12   consent to a search.  (RT 17).  Deputy Esquibel then requested to have a canine unit assist at the

13   scene.  (RT 18).

14        According to Deputy Schmidt, a Narcotics Canine Handler for the Riverside County Sheriff's

15   Department, he received a call at 2:15 p.m. from Deputy Esquibel to respond to the traffic stop

16   involving petitioner.  (RT 48).  Deputy Schmidt estimated that it took him twenty to twenty-five

17   minutes to reach the location.  (RT 49-50).  After arriving, Deputy Schmidt had his canine "sniff

18   the exterior of the vehicle."  (RT 52).  The search lasted "a couple of minutes."  (RT 19).  The

19   canine made an "alert" on the handle of the front driver's side door.  (RT 52-53).  The canine also

20   searched the interior of the vehicle, and made an alert on a backpack inside the vehicle.  (RT 53).

21   Deputy Schmidt informed Deputy Esquibel of the results of the canine search.[4]  (RT 53).

22

23        [3]   California law mandates that tinted windows must allow for at least 70% light

24   transmittance.  See California Vehicle Code § 26708(d)(2).  Based on Deputy Esquibel's
     testimony, he mistakenly believed that any tinting of a vehicle's front windows was prohibited.  (RT

25   25-26).

26        [4]   Records from Deputy Schmidt's mobile digital computer reflected a "show up" code at

27   3:08 p.m. and a "closure" code at 3:58 p.m.  (RT 58-59).  Deputy Schmidt explained, however, that
     the records indicate when he pulled the file number for the canine search, and when he closed the

28   file.  The codes did not reflect the time that the canine search actually took place as such codes
     (continued...)

4

Deputy Esquibel then searched the interior of the vehicle.  He found marijuana in an open backpack on the back seat.  (RT 20).  Also on the back seat was an open box of Mac Book computers.  (RT 21).  Deputy Esquibel was aware that gang members committed residential and commercial burglaries, and suspected that the computers were stolen.  (RT 22).  He contacted an investigator who informed him that there was a recent burglary of a school involving Mac Book computers.  (RT 22-23, 41).  He then picked up one of the computers and "noticed that the label was peeled."  (RT 22, 32, 41).

On cross-examination, Deputy Esquibel testified that he believed that the California Vehicle Code prohibited "any after-market tint" on a vehicle's windows.  When asked if he was aware that the Vehicle Code allows for some tint as long as paperwork is in the vehicle indicating that the tint is legal, Deputy Esquibel responded, "No.  I just knew there was an extreme amount of tint on [the Tahoe's] windows[.]"  (RT 26).  Deputy Esquibel stated that, after pulling petitioner over, he never measured the tint on the Tahoe's windows, and did not ask petitioner to show any paperwork reflecting that the tint complied with the specifications set forth in the Vehicle Code.  (Id.).

Records from Deputy Esquibel's vehicle's computer show that petitioner's name was run three times, and all within the span of one minute -- at 1:35 p.m., 1:36 p.m., and again at 1:36 p.m. (RT 37). Deputy Esquibel, however, denied running petitioner's name through the computer prior to the traffic stop at 2:12 p.m.  (RT 24-25).  He testified that he remembered running petitioner's name after the traffic stop using his Nextel phone, but stated that his partner who was also assigned to the vehicle "may have ran the name."  (RT 34-35).  Nothing indicated that petitioner's name was run through the deputy's computer after 2:12 p.m.  (RT 37).

At the hearing on the motion to suppress, petitioner's counsel pointed out these inconsistencies regarding when petitioner's name was run on the deputy's computer versus when

---

[4](...continued)
are used only to compile statistics on a monthly basis regarding how many times a canine search occurred and whether any narcotics were found.  (RT 55-58, 61-62).  Deputy Schmidt testified that during the fifty minute period between opening and closing the file, he "might have gone back to the station" or "might have gone to get something to eat," and that the canine search "definitely" did not last fifty minutes.  (RT 59).

the stop occurred.  (RT 64).  Counsel argued that the reason for the stop -- having tinted windows -- was not a violation of the law, and that the real reason why petitioner and the other two occupants were ordered out of the car was because Deputy Esquibel "kn[ew] who they were."  (RT 64-65).  Petitioner's counsel also made the following arguments:  that if Deputy Esquibel smelled marijuana there was no need to call in the canine unit to establish probable cause; that petitioner was detained for an extended period, but the police records prevented the court from being able to determine the duration of the stop; that a prolonged stop can turn into an arrest, and that any ensuing search would be unconstitutional; there was no probable cause for the officer to search the box of computers, since the police dog only alerted on the door handle and the backpack; and there had been no evidence that the single computer visible in the box was contraband.  (RT 65-67, 73-74).  Petitioner's counsel also challenged Deputy Esquibel's credibility based on certain changes and inconsistencies in the deputy's testimony.  (RT 67).

The trial court denied the motion to suppress, stating that if petitioner's window tint was lawful, he had the burden of demonstrating that to the officers.  (RT 74-75).  The court further stated:

> I would disagree particularly that a prolonged stop automatically becomes an arrest.  The prolonged stop is subject to the rule of reason.  In this case we had a dog. . . . [¶]  Taking everything into consideration concerning the progress and the order in which things occurred, a reasonable stop became a reasonable further investigation, which ultimately culminated in probable cause to arrest.  [¶]  And a reasonable ground for the further investigation relating to the computers was testified to by the officers in sequence and included the information on the school burglaries from the other officer[.]

(RT 76).

## IV.

## STANDARD OF REVIEW

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Therefore, the Court applies the AEDPA in its review of this action.  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.

Ct. 2059, 138 L. Ed. 2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389  (2000).  In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams).  A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062.  The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; accord Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n.7, and "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002) (per curiam).  A federal court may not "substitut[e] its own judgment for that of the state court, in contravention

of 28 U.S.C. § 2254(d)." Id.; Early v. Packer, 537 U.S. 3, 123 S. Ct. 362, 366, 154 L. Ed. 2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412.  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. Williams, 529 U.S. at 412; Moses v. Payne, 555 F.3d 742, 759 (9th Cir. 2009).  Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

A federal habeas court conducting an analysis under § 2254(d) "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 562 U.S. 86, 101-02, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").  In other words, to obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

For the reasons explained infra, the claims in Grounds One, Three, and Six are barred from habeas review.  As for petitioner's claim in Ground Two (ineffective assistance of appellate counsel regarding the search and seizure), he presented this claim in his habeas petition filed in the Los Angeles County Superior Court, which denied the claim on the merits (Lodgment Nos. 14,

15), and in his second habeas petition filed in the California Supreme Court, which denied the claim citing In re Clark, 5 Cal. 4th at 767-69.  (Lodgment Nos. 20, 21).  Because the last reasoned decision is the California Supreme Court's denial on procedural grounds, the Court concludes that the appropriate standard of review for Ground Two is de novo.  See Amado v. Gonzalez, 758 F.3d 1119, 1130 (9th Cir. 2014)  (look to last reasoned decision that finally resolves the claim, and if the claim was not adjudicated on the merits, then review is de novo).  In any event, the Court's rejection of this claim under a de novo standard of review demonstrates that the claim would also be rejected under the more deferential AEDPA standard of review.  See Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) (where it is unclear whether AEDPA deference applies, a court may deny writ of habeas corpus under § 2254 by engaging in de novo review because a habeas petitioner will not be entitled to relief under § 2254 if the claim can be rejected on de novo review).

It appears that petitioner's claim in Ground Four was set forth in his habeas petition filed in the California Court of Appeal (Lodgment No. 16), and in both the first and second petitions filed in the California Supreme Court (Lodgment Nos. 18, 20).  Because the last denial of this claim was for a procedural reason (see Lodgment No. 21), out of an abundance of caution the Court will review the claim in Ground Four de novo.  Amado, 758 F.3d at 1130; Berghuis, 130 S.Ct. at 2265.

The claims in Grounds Five and Seven were presented in petitioner's habeas petitions filed in the superior court and California Court of Appeal, and in his first petition filed in the California Supreme Court.  Because these claims were denied on the merits, the Court  reviews the claims under AEDPA's deferential standard.  See Richter, 562 U.S. at 101-03.

/

/

/

/

/

9

**V.**

**DISCUSSION**

**GROUND ONE:**     **INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

**GROUND TWO:**     **INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

**GROUND SIX:**     **DENIAL OF MOTION TO SUPPRESS**

In Grounds One, Two, and Six, petitioner asserts claims relating to his motion to suppress. In Ground One, petitioner asserts that his trial counsel was ineffective for failing to "properly litigate a meritorious Fourth Amendment claim." (Petition Attachment at 13). According to petitioner, his trial counsel should have called him as a witness at the suppression motion hearing to testify that the officer who pulled petitioner over ordered him to exit his vehicle at gunpoint, handcuffed him, and then locked him in the back of the patrol car. Petitioner would have further testified that he was never told he had been stopped because of a window tint violation. (Id. at 17-19). Petitioner asserts that his testimony would have demonstrated that he had been subject to a de facto arrest without probable cause. (Id. at 21).

In Ground Two, petitioner asserts that his appellate counsel was ineffective for failing to raise on appeal the claim that he was subjected to an unlawful arrest, as well as his ineffective assistance of trial counsel claim set forth in Ground One. In Ground Six, petitioner asserts that the trial court erred in denying his suppression motion.

**A.**     **Ground One: Ineffective Assistance of Trial Counsel**

In federal habeas proceedings, the two-step analysis outlined by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), governs ineffective assistance claims. Under Strickland, petitioner first must prove that his attorney's representation fell below an objective standard of reasonableness by identifying the acts or omissions that rendered the representation objectively unreasonable. Id. at 687-88, 690. An attorney's performance is deemed deficient if it is objectively unreasonable under prevailing professional norms. Id. at 687-88; Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990). Review of counsel's performance is highly deferential, and the petitioner must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable representation.

Strickland, 466 U.S. at 689.  In reviewing a challenge to the effectiveness of counsel, the court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.

With respect to the second prong of the Strickland analysis, a petitioner must show prejudice by demonstrating a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  Id. at 694.  A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome."  Id.

Petitioner bears the burden of satisfying both prongs of the Strickland standard.  Strickland, 466 U.S. at 687; Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010).  Moreover, because petitioner must prove both deficient performance and prejudice, a federal court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Strickland, 466 U.S. at 697.

Here, petitioner's claim of ineffective assistance of trial counsel in Ground One is barred due to his plea of no contest.  "As a general rule, one who voluntarily and intelligently pled guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations." Mitchell v. Superior Court, 632 F.2d 767, 769 (9th Cir. 1980). As stated by the United States Supreme Court in Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea[.]

This principle applies equally to defendants who plead no contest.  Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir. 1992).  When a criminal defendant enters a plea of no contest on the advice of counsel, he may only attack the voluntary and intelligent character of his plea by showing that

1  he entered a plea based on counsel's advice that was below the constitutional standard of

2  competence demanded of defense attorneys.  See Premo v. Moore, 562 U.S. 115, 123-28, 131

3  S.Ct. 733, 178 L.Ed.2d 649 (2011); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d

4  203 (1985).

5         In Ground One, petitioner does not allege facts challenging the voluntary and/or intelligent

6  nature of his plea.  Rather, he attacks his counsel's performance in connection with the motion to

7  suppress.  Thus, his ineffective assistance claim is barred from habeas review.[5]  See, e.g., United

8  States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (finding that guilty plea precluded petitioner from

9  raising claim that he received ineffective assistance of counsel at pre-plea hearing); Ortberg, 961

10  F.2d at 137-38 ("petitioner's nolo contendere plea precludes him from challenging alleged

11  constitutional violations that occurred prior to the entry of that plea"); Mize v. Cate, 2013 WL

12  1326042, at *9 (N.D. Cal. Mar. 29, 2013) ("Because the instances of ineffective assistance of trial

13  counsel alleged by petitioner in claims one and two occurred prior to the entry of his plea of nolo

14  contendere, petitioner may not pursue these claims in this federal habeas proceeding.").

15      **B.    Ground Two:  Ineffective Assistance of Appellate Counsel**

16         Claims alleging ineffective assistance of appellate counsel are also reviewed according to

17  the two-part test set forth in Strickland.  See Morrison v. Estelle, 981 F.2d 425, 427 (9th Cir. 1992)

18  (finding the standard for assessing the performance of trial and appellate counsel is essentially

19  the same under Strickland); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  First, to

20  _____

21      [5]   Since Tollett, the United States Supreme Court has recognized that the bar on attacking
    pre-plea constitutional errors does not apply when the defect in question is a "jurisdictional" one
    that implicates the government's power to prosecute the defendant.  United States v. Johnston,

22  199 F.3d 1015, 1019 n. 3 (9th Cir. 1999) ("The Court has subsequently limited the scope of those

23  exceptions to include only those claims in which, judged on the face of the indictment and record,
    the charge in question is one which the state may not constitutionally prosecute.") (citing United

24  States v. Broce, 488 U.S. 563, 574-76, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)); see also Menna

25  v. New York, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (holding that the bar on
    collateral challenges to pre-plea errors did not apply to a claim that the indictment under which a

26  defendant pleaded guilty placed him in double jeopardy); Blackledge v. Perry, 417 U.S. 21, 30-31,
    94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding that a guilty plea did not foreclose a claim that a

27  defendant was vindictively prosecuted).  Here, no "jurisdictional" exception to the Tollett rule
    applies, as petitioner's claim in Ground One does not concern the power of the state to prosecute

28  him.

1    establish deficient performance, "petitioner must show that counsel's performance was objectively

2    unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel

3    acted unreasonably in failing to discover and brief a merit-worthy issue." Moormann v. Ryan, 628

4    F.3d 1102, 1106 (9th Cir. 2010).   Prejudice "means that the petitioner must demonstrate a

5    reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner

6    would have prevailed in his appeal."   Id.   To defeat an ineffective assistance claim, it is not

7    required that appellate counsel raise every colorable or non-frivolous claim, as effective appellate

8    advocacy involves weeding out weaker claims in order to focus on stronger ones.   Jones v.

9    Barnes, 463 U.S. 745, 751-54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); Miller, 882 F.2d at 1434.

10       Petitioner contends that his appellate counsel should have argued on appeal that the traffic

11   stop was invalid, that petitioner's detention was a de facto arrest, and that the seizure of the

12   computers was unlawful. (Reply at 20).   Petitioner further contends that appellate counsel should

13   have raised a claim of ineffective assistance of trial counsel based on trial counsel's failure at the

14   suppression motion hearing to:  (1) call petitioner as a witness at that hearing; (2) impeach Deputy

15   Esquibel's suppression hearing testimony with his preliminary hearing testimony; (3) argue that

16   the traffic stop was invalid because it was based on a mistake of law; (4) argue that the detention

17   was a de facto arrest; and (5) argue that the seizure of the computers was unlawful because it did

18   not fall within the purview of the "plain view" doctrine.  (Reply at 15).

19       First, petitioner's claim of ineffective assistance of appellate counsel for failure to challenge

20   the traffic stop and subsequent vehicle search fails.  Before conducting an investigatory traffic

21   stop, law enforcement officers must form at least a reasonable suspicion of criminal activity in

22   order to comply with the Fourth Amendment.  United States v. Twilley, 222 F.3d 1092, 1095 (9th

23   Cir. 2000); United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (Fourth

24   Amendment requires reasonable suspicion, not probable cause, for a traffic stop); see also U.S.

25   v. $33,020.00 in U.S. Currency, 2010 WL 2196115, at *2 (S.D. Cal. June 1, 2010) ("If the initial

26   traffic stop is lawful, then the resulting search is lawful. On the other hand, if the initial traffic stop

27   is unlawful, then the resulting search is unlawful. If the search is unlawful, then the defendant['s]

28   money and other evidence would be subject to suppression as fruit of an unlawful stop and

search."). Although Deputy Esquibel mistakenly believed that <u>any</u> tint of the front windows was a violation of the Vehicle Code, that fact alone does not render the traffic stop unlawful. <u>See</u> <u>United States v. Wallace</u>, 213 F.3d 1216, 1220 (9th Cir. 2000) ("That [the officer] had the mistaken impression that all front-window tint is illegal is beside the point. . . . The issue is not how well [he] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation."). Deputy Esquibel testified that the front windows of petitioner's Tahoe had an "extreme" amount of tint that prevented him from being able to see a passenger sitting in the front seat. (RT 42-43). Those facts indicate that the tinting exceeded the legal limits in California, and thus established that Deputy Esquibel had a reasonable suspicion of a violation of the California Vehicle Code.[6] <u>See</u> <u>Wallace</u>, 213 F.3d at 1220 ("[T]he fact that [the officer] observed a 'heavy tint' and that 'the occupant inside was at a harder degree to look into the vehicle' establishes that the tinting on [the defendant's] windows probably allowed less than 70% light transmittance, which in turn establishes probable cause to believe that the vehicle was in violation of California law."); <u>People v. Hanes</u>, 60 Cal.App.4th Supp. 6, 72 Cal.Rptr.2d 212 (1997) (tinting which prevented the officer from seeing the occupants of front seats of the car created a reasonable suspicion that tinting violated the California Vehicle Code). Thus, because the traffic stop was based on a reasonable suspicion, the Court concludes that it was not objectively unreasonable for petitioner's appellate counsel to not challenge the legality of the traffic stop on direct appeal, as such an argument would have been futile. <u>See</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996) (counsel's failure to take futile action is not deficient performance); <u>Boag v. Raines</u>, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

It was also a reasonable strategy for appellate counsel to not challenge the lawfulness of the detention and vehicle search. In a letter to petitioner dated August 29, 2012, appellate counsel explained her reasons for not raising the argument that the search was illegal:

---

[6]     The Court notes that, at the suppression hearing, no photos of the Tahoe were produced, and there was no testimony regarding the percentage of light transmittance the tinting allowed.

> Essentially, once the officer smelled marijuana, it was legal for him to detain you for an extended period of time while he sought confirmation from the drug dog and searched the car. . . . [¶] [B]ecause the officer had probable cause to search the entire car for anywhere that marijuana might be found, he had probable cause to search inside the box of computers. Because he had the right to look inside that box, he had the right to pick up the computer and look at the bottom of the computer, at which point he developed probable cause to believe the computer might be stolen, because there were numerous computers in the box and because a label appeared to be removed from the bottom of the laptop.

(Petition, Exhibit D).

In a letter dated September 10, 2012, appellate counsel stated to petitioner:

> The difference between your case and most extended stop cases is that the officer immediately himself smelled marijuana. Once the officer smelled marijuana, he had probable cause to search your entire car for marijuana. His decision to bring a dog out to aid in that search was reasonable under the circumstances, but he didn't have to wait for the dog to search your car. An extended stop is only a problem when the police don't have probable cause to believe that a greater crime is being committed. While your case may seem, on the surface, to be like other cases, this fact makes it impossible to challenge the search in your case.

(Petition, Exhibit D).

Appellate counsel's reasoning was sound. Here, after Deputy Esquibel detected the odor of marijuana, which was confirmed by the canine search, he had probable cause to search petitioner's vehicle and the containers within the vehicle. See California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991 (1991) ("police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained"); People v. Waxler, 224 Cal.App.4th 712, 168 Cal.Rptr.3d 822 (Cal.App. 1 Dist. 2014) (odor of marijuana may furnish probable cause to search a vehicle). In his search for marijuana, Deputy Esquibel found the box of Mac Book computers. Deputy Esquibel was aware that gang members committed residential and commercial burglaries, and was informed that a recent burglary of Mac Book computers had occurred. He picked up one computer and noticed that a label had been removed, which further indicated that the computers were stolen. Thus, Deputy Esquibel had probable cause to believe the computers were stolen. (RT 21-23). Because probable cause had been established regarding the computers, the ultimate seizure of the computers was not in violation

1    of petitioner's Fourth Amendment rights.  It follows therefore that appellate counsel was not

2    ineffective for omitting this claim on direct appeal as there was no likelihood of success.  Similarly,

3    there is no likelihood that petitioner would have prevailed on appeal if appellate counsel had

4    included the argument that the prolonged detention amounted to an unlawful arrest.  "[A]n officer

5    may prolong a traffic stop if the prolongation itself is supported by independent reasonable

6    suspicion."  United States v. Evans, 786 F.3d 779, 788 (9th Cir. 2015).  Here, Deputy Esquibel

7    detected the odor of marijuana and requested a canine unit to search the vehicle for narcotics.

8    Thus, reasonable suspicion justified the prolonged investigation, i.e., the wait for the canine unit

9    to arrive.  For these reasons, appellate counsel was not ineffective for omitting a Fourth

10   Amendment challenge on direct appeal.

11        As for petitioner's contention that his appellate counsel was ineffective for not raising a

12   claim of ineffective assistance of trial counsel regarding the motion to suppress, his contention is

13   without merit.  Petitioner asserts that his trial counsel was ineffective for not calling petitioner to

14   testify at the suppression hearing, because he would have testified that he was ordered out of his

15   vehicle at gunpoint and was handcuffed before being placed in the patrol car, and that he was

16   never informed that he was being pulled over for having tinted windows.  This is in contrast with

17   Deputy Esquibel's testimony, in which he stated that he ordered petitioner and the other two

18   occupants to step out of the Tahoe and stand near the patrol car.  Deputy Esquibel did not state

19   that he used his firearm in any way during the traffic stop.  (RT 16, 28-29).  There is nothing in the

20   record of evidence supporting petitioner's version of the traffic stop.  Rather, petitioner has only

21   asserted self-serving statements in support of his contention.  Petitioner's proposed testimony

22   therefore would have created a credibility issue that he likely would have lost given his criminal

23   history.  (See, e.g., CT 113-17).  Accordingly, appellate counsel was not deficient for omitting this

24   claim on direct appeal.  Moreover, it is not reasonably probable that, had the claim been included,

25   petitioner would have prevailed.

26        Petitioner's other complaints about his trial counsel are baseless.  Contrary to petitioner's

27   contentions, petitioner's counsel did in fact argue at the suppression hearing that the traffic stop

28   for the tinted windows was pretextual, and that the prolonged stop turned into an arrest.  (RT 64-

66).   Counsel also argued that Deputy Esquibel searched the Mac Book computer without probable cause, and challenged Deputy Esquibel's credibility by pointing out inconsistencies in his testimony.  (RT 66-67, 73-74).  Additionally, petitioner faults trial counsel for failing to argue that the seizure of the computers did not fall under the plain view doctrine.  The plain view doctrine holds that "an officer may seize an object in plain view without a warrant so long as the officer is lawfully present in the place from which the object is viewed, the incriminating nature of the object is immediately apparent, and the officer has a lawful right of access to seize the object."  Robey v. Superior Court, 56 Cal.4th 1218, 1244, 158 Cal.Rptr.3d 261 (2013).  This doctrine does not appear to be applicable to petitioner's case, however, as Deputy Esquibel searched the interior of the Tahoe based on probable cause, which allowed the deputy to search the vehicle and any containers within it for marijuana, which led to the discovery of the box of computers.  As explained in more detail supra, Deputy Esquibel then developed probable cause that the computers were stolen.

Because petitioner has not established that his trial counsel was ineffective with respect to the motion to suppress, he cannot show that his appellate counsel was ineffective for failing to challenge on appeal trial counsel's performance.  Accordingly, pursuant to this de novo review, the Court concludes that no habeas relief is warranted for Ground Two.[7]

## C.   Ground Six:  Trial Court's Denial of Suppression Motion

Petitioner's claim in Ground Six that the trial court erred by denying his suppression motion is barred for the reasons explained below.

---

[7]   In any event, under California law, a petition for habeas corpus is the preferred method for bringing an ineffective assistance of counsel claim because such a claim usually requires consideration of evidence outside the trial record.  People v. Salcido, 44 Cal.4th 93, 172, 79 Cal.Rptr.3d 54 (2008) ("except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel generally must be raised in a petition for writ of habeas corpus based on matters outside the record on appeal") (internal quotations omitted).  The record shows that petitioner unsuccessfully raised claims alleging ineffective assistance of trial counsel in his habeas petitions filed in the California courts.  (See Lodgment Nos. 14, 16, 18).  This further indicates that he was not prejudiced by the omission of ineffective assistance claims in his direct appeal, as the claims would have been similarly denied.

1    A state prisoner may not invoke a Fourth Amendment claim on federal habeas review if he

2    had the opportunity for "full and fair" consideration of the claim in state court.  Stone v. Powell, 428

3    U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  "The relevant inquiry is whether petitioner

4    had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim

5    was correctly decided."  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also

6    Locks v. Summer, 703 F.2d 403, 408 (9th Cir. 1983).

7    California provides criminal defendants with a full and fair opportunity to litigate Fourth

8    Amendment claims through the procedures of California Penal Code § 1538.5.  Section 1538.5

9    permits a defendant to move to suppress evidence on the ground that it was obtained in violation

10   of the Fourth Amendment.  See Locks, 703 F.2d at 408; Mack v. Cupp, 564 F.2d 898, 901 (9th

11   Cir. 1977).  Here, as discussed above, petitioner filed a Section 1538.5 motion in the trial court to

12   suppress the evidence obtained from the search of his car.  (CT 91-93).  After a hearing, during

13   which both the prosecution and defense had the opportunity to call witnesses and present

14   argument, the trial court denied the motion.  (RT 12-76).

15   As shown, petitioner has had a full and fair opportunity to litigate his Fourth Amendment

16   claim.  The rule of Stone v. Powell therefore bars this Court from further review.  See Caldwell v.

17   Cupp, 781 F.2d 714, 715 (9th Cir. 1986); Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990)

18   ("Given that [the defendant] had an opportunity in state court for 'full and fair litigation' of his fourth

19   amendment claim, the Constitution does not require that [he] be granted habeas corpus relief on

20   the ground that evidence obtained in an unconstitutional search or seizure was introduced at his

21   trial.").  Petitioner is not entitled to habeas relief on Ground Six.

22

23   **GROUND THREE:  STATE COURT EXCEEDED ITS JURISDICTION BY FAILING TO HOLD
24                AN EVIDENTIARY HEARING FOR PETITIONER'S STATE HABEAS
                 PETITION**

25   In Ground Three, petitioner asserts that the superior court acted outside its jurisdiction and

26   in violation of petitioner's constitutional rights when it denied his habeas petition without holding

27   an evidentiary hearing.  (Petition Attachment at 36).

28   Petitioner's claim is not cognizable in this habeas proceeding because federal habeas relief

1   is not available to redress errors in state post-conviction proceedings.  <u>Franzen v. Brinkman</u>, 877

2   F.2d 26 (9th Cir. 1989) (per curiam) ("[A] petition alleging errors in the state post-conviction review

3   process is not addressable through habeas corpus proceedings."); <u>see also</u> <u>Ortiz v. Stewart</u>, 149

4   F.3d 923, 939 (9th Cir. 1998) ("[F]ederal habeas relief is not available to redress alleged

5   procedural errors in state post-conviction proceedings."); <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027,

6   1045 (9th Cir. 1997) (holding that errors committed in state post-conviction proceedings are not

7   cognizable in federal habeas proceedings).  Accordingly, habeas relief is not warranted for Ground

8   Three.

9

10   **GROUND FOUR:   TRIAL COURT VIOLATED <u>APPRENDI</u>**

11        In Ground Four, petitioner asserts that the trial court made a gang enhancement finding in

12   violation of the <u>Apprendi</u> line of cases.  (Petition Attachment at 44-50).

13        In <u>Apprendi</u>, 530 U.S. 466, <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159

14   L.Ed.2d 403 (2004), and <u>Cunningham v. California</u>, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856

15   (2007), the Supreme Court established that, for Sixth Amendment purposes, other than the fact

16   of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

17   statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

18        In petitioner's case, the Amended Information alleged that petitioner committed the charged

19   crime "for the benefit of, at the direction of, and in association with a criminal street gang with the

20   specific intent to promote, further and assist in criminal conduct by gang members" pursuant to

21   California Penal Code § 186.22(b)(1)(A).  (CT 114).  Petitioner pleaded no contest to the

22   allegation.  (RT 97).

23        When petitioner pleaded no contest, he waived his right to a jury trial on the gang

24   allegation, rendering the <u>Apprendi</u> line of cases inapplicable.  <u>See</u> <u>Scott v. Clark</u>, 2010 WL

25   441540, at *5 (C.D. Cal. Feb.1, 2010) (<u>Apprendi</u>, <u>Blakely</u>, and <u>Cunningham</u> inapplicable where

26   defendant waived right to jury trial by no contest plea and admitted to sustaining prior prison

27   sentence used to impose upper term and sentencing enhancements); <u>Taylor v. Mendoza-Powers</u>,

28   2009 WL 1037919, at *4 (C.D. Cal. Apr.15, 2009) ("<u>Cunningham</u> is of no help to petitioner because

petitioner's no contest plea established all the facts necessary to support the trial court's sentence. He explicitly admitted the truth of his prior convictions and acknowledged that his plea could subject him to the maximum sentence."). Thus, petitioner has not demonstrated any Apprendi violation as the trial court properly relied on petitioner's admission to enhance his sentence based on the gang allegation.[8]

Pursuant to this de novo review, Ground Four is without merit.

**GROUND FIVE:      INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

In Ground Five, petitioner complains that his trial counsel failed to investigate his prior conviction and failed to hire a gang expert. He also asserts that his trial counsel was ineffective for advising him to admit the gang allegation. (Petition Attachment at 51-56).

First, to the extent petitioner's ineffective assistance claim is based on events prior to his plea, his claim is barred by Tollett. 411 U.S. at 267. Petitioner's no contest plea precludes any challenge to the factual basis of his conviction. See also Fernandez v. Dep't of Corr., 2013 WL 1090419, at *4 (C.D. Cal. Feb. 4, 2013) (petitioner's no contest plea "precludes any due process challenge to the factual basis of her conviction"). In any event, although petitioner faults his trial counsel for not using a gang expert, he has failed to explain with any specificity what information the gang expert would have provided to help his defense. "Speculation about what an expert could have said is not enough to establish prejudice." See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997); see also Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended, 253 F.3d 1150 (9th Cir. 2001) (speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance).

Petitioner also alleges that his trial counsel failed to "ascertain the nature and circumstances of his prior conviction." (Petition at 55). Petitioner's argument, however, concerns his prior conviction in case number RIF122562, which was not the prior conviction to which he

---

[8]   The Court notes that petitioner properly received a two-year term for the gang enhancement. Cal. Penal Code § 186.22(b)(1)(A). (RT 99; CT 138).

pleaded no contest in this case.  (See Petition Attachment at 55; Lodgment No. 20 at 194-95).

Rather, petitioner pleaded no contest to the allegation that in case number RIF103626 he suffered

a serious or violent prior conviction for attempted residential burglary.[9]  Petitioner has not set forth

any information questioning the validity of his prior conviction for attempted burglary.  Accordingly,

petitioner's contention of ineffective assistance regarding the prior conviction allegation appears

to be baseless.

The Court next considers the legality of petitioner's no contest plea.  "The longstanding test

for determining the validity of a guilty plea is 'whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant.'"  Hill, 474 U.S.

at  56 (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970));

see also Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).  A

defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent

nature of his plea by showing, pursuant to the Strickland two-part test, that counsel's performance

was deficient and that the deficient performance prejudiced his defense.  Hill, 474 U.S. at 57.

In the plea context, to meet the first prong of the Strickland test, a petitioner must show that

counsel's advice was not within the range of competence demanded of attorneys in criminal

cases.  Hill, 474 U.S. at 56-59.  The prejudice component requires a showing of a reasonable

probability that, but for counsel's unprofessional errors, the petitioner would not have pleaded

guilty and would instead have insisted on going to trial.  Hill, 474 U.S. at 59.  The failure to

---

[9]    In support of his ineffective assistance of trial counsel claim regarding the prior conviction, petitioner in the Petition refers to a declaration signed by a deputy public defender who represented petitioner in case numbers INF1100890 and RIF1102773 in the Riverside County Superior Court.  Petitioner attached the declaration to his second habeas petition filed in the California Supreme Court, but did not include it in the instant Petition.  (See Petition Attachment at 55; Lodgment No. 20 at 194-95).  According to facts alleged in the declaration, petitioner pleaded guilty in case number RIF122562 to, inter alia, a violation of California Penal Code § 186.22(a) (participation in a criminal street gang).  Petitioner's counsel in case number RIF122562 told petitioner that the Section 186.22(a) conviction was not a "strike" under California's Three Strikes Law.  Later, however, despite trial counsel's representation, the Section 186.22(a) conviction was alleged as a prior strike conviction in case numbers INF1100890 and RIF1102773.  (See Lodgment No. 20 at 195-95).  See Cal. Penal Code § 667.  Thus, it appears that petitioner's allegations in the instant Petition concern case number RIF122562 and the use of that conviction as a prior strike in cases unrelated to the instant matter.

1  establish either prong of <u>Strickland</u> precludes a petitioner from obtaining relief.  <u>Strickland</u>, 466

2  U.S. at 697; <u>see</u> <u>also</u> <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1244 n.38 (9th Cir. 2005)

3  ("Because [p]etitioner must meet both prongs to be entitled to habeas relief, we do not reach the

4  second prong."); <u>Thomas v. Borg</u>, 159 F.3d 1147, 1152 (9th Cir. 1998) ("We need not evaluate

5  both prongs of the <u>Strickland</u> test if the defendant fails to establish one.").

6       Here, petitioner fails to satisfy the <u>Strickland</u> test.  Petitioner concedes in the Petition that

7  he entered into the plea agreement to avoid being sentenced under the Three Strikes law to

8  twenty-five years to life.[10]  (<u>See</u> Exhibit A at 2-3.  <u>See</u> Cal. Penal Code § 667(e)(2).  Accordingly,

9  because petitioner was facing a more severe sentence had he gone to trial and been convicted

10  of all the charges, his counsel's advisement to accept a twelve-year sentence in exchange for the

11  no contest plea did not amount to deficient performance.  <u>See</u>, <u>e.g.</u>, <u>United States v. Sutton</u>, 794

12  F.2d 1415, 1421-22 (9th Cir. 1986) (counsel's advice to plead guilty to one of nine counts was

13  reasonable where defendant's admission of one count in effect admitted guilt to the eight counts

14  dismissed as part of the plea agreement); <u>Williams v. Salazar</u>, 2011 WL 7069550, at *5 (C.D. Cal.

15  Nov. 30, 2011) (counsel's advice to plead no contest in exchange for a five-year sentence was not

16  deficient performance where, had the petitioner been convicted, he would have received his third

17  strike and faced a maximum sentence of 29 years to life under California's Three Strikes Law).

18  Additionally, given that petitioner only challenges his counsel's purported advice to plead to the

19  gang allegation and does not challenge counsel's advice to plead to the remaining charges, there

20  is no indication that, but for trial counsel's alleged errors with respect to the gang allegation,

21  petitioner would have elected to go to trial on <u>all</u> of the charges (<u>i.e.</u>, the receipt of stolen property

22  charge and the sentence enhancements).  As such, he has not established <u>Strickland</u> prejudice.

23  <u>See</u> <u>Hill</u>, 474 U.S. at 59 (to show prejudice, a petitioner must demonstrate that, but for counsel's

24  unprofessional errors, he would not have pleaded guilty and would have gone to trial).

25       Petitioner does not appear to assert any other basis for challenging the validity of his plea.

26  _____

27       [10]   In the Amended Information, it was alleged that petitioner had three prior serious or
violent felony convictions.  (CT 115).  Pursuant to his plea agreement, he only admitted one prior

28  felony conviction.  (CT 138).

1    In any event, a review of the record confirms that petitioner's plea was voluntary and intelligent.

2         At petitioner's plea hearing, petitioner stated to the court that he read and understood "all

3    the Constitutional Rights and consequences" listed on the plea form, which he initialed and signed.

4    (RT 91; see also CT 119-22).  Petitioner also stated that he discussed the facts of his case with

5    his attorney, as well as "pleas or legal defenses that might be available to [him]."  (RT 91-92).  The

6    prosecutor informed petitioner that he was charged with one count of receiving stolen property

7    (Cal. Penal Code § 496), and it was alleged that he committed the crime for the benefit of a gang

8    pursuant to California Penal Code § 186.22(b)(1)(A), that he suffered a prior serious or violent

9    felony conviction in case number RIF103626 (attempted residential burglary), and that he had not

10   remained free of prison custody for five years before being arrested for the current offense

11   pursuant to California Penal Code § 667.5(b).  (RT 92-93).  The prosecutor explained that,

12   pursuant to the plea agreement, petitioner would admit the charge and allegations, and petitioner

13   indicated that he understood.  (RT 93).  Petitioner denied that anyone made any threats or

14   promises to him or anyone close to him to induce him to plead to the charges.  (RT 93-94).  When

15   asked by the prosecutor if he was pleading freely and voluntarily because it was in his best

16   interest, petitioner said "yes."  (RT 94).  Petitioner also indicated that he understood the parole and

17   deportation consequences, and that the instant charge could be used against him to enhance his

18   sentence in the event he is arrested for a felony in the future.  (RT 94).

19        Petitioner next acknowledged that he understood he had the right to a trial, the right to

20   confront the witnesses against him, the right to put on a defense, and the right against self-

21   incrimination.  (RT 94-95).  Petitioner then pleaded no contest to the receipt of stolen property

22   charge and made no contest admissions to the gang allegation, the allegation that he suffered a

23   prior serious or violent felony, and the allegation that he did not remain free of prison custody for

24   five years before committing another offense.  (RT 96-98).

25        Based on petitioner's representations at the plea hearing, the trial court accepted

26   petitioner's no contest plea and no contest admissions, and found that petitioner had "freely,

27   voluntarily, understandingly and knowingly enter[ed] a no contest plea . . . with knowledge of the

28   consequences, both immediate and long term," and that there was "a factual basis for the entry

1  of the no contest pleas from the probation report[.]" (RT 98-99).  Pursuant to the plea agreement,

2  the court sentenced petitioner to twelve years in state prison.  (RT 99).

3       A defendant's representations at a plea hearing, as well as any findings made by the judge

4  accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings."

5  Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  "Solemn

6  declarations in open court carry a strong presumption of verity."  Id.; see also Muth v. Fondren,

7  676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong

8  presumption of truth.").  Thus, petitioner's hearing statements demonstrate the intelligent and

9  voluntary nature of his plea as nothing in the record indicates that petitioner did not understand

10  the charges and allegations that he was admitting.

11       Based on the foregoing, the state courts' denial of this claim was not contrary to Supreme

12  Court precedent.  Richter, 562 U.S. at 101-03.  No habeas relief is warranted for Ground Five.

13

14  **GROUND SEVEN:  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

15       In Ground Seven, petitioner asserts that his appellate counsel was ineffective for failing to

16  raise on appeal the remaining claims set forth in the Petition.  For the reasons explained below,

17  his claim lacks merit.

18       First, with respect to Ground Three, petitioner apparently asserts that appellate counsel was

19  ineffective for not challenging the superior court's denial of his habeas petition.  In California,

20  "[a]ppointed counsel in noncapital appeals do not have an obligation to investigate possible bases

21  for collateral attack on the judgment, and retained counsel must do so only if the client retains

22  them for that purpose."  Clark, 5 Cal.4th at 784 n.20; see In re Barnett, 31 Cal.4th 466, 475 (2003)

23  (in California, no constitutional right to counsel in habeas proceedings, although in capital cases

24  counsel is appointed to prepare habeas claims).  Accordingly, in the event petitioner's appellate

25  counsel was appointed, she had no obligation to raise any habeas claims or challenge any habeas

26  denial.  Even if petitioner retained his appellate counsel, there is no indication that he retained her

27  for the purpose of preparing habeas claims -- especially given that petitioner did not use counsel

28  for any of his state habeas filings.  (See, e.g., Petition, Exhibit D; Lodgment Nos. 14, 16, 18, 20).

1  Accordingly, his claim of ineffective assistance of counsel for failing to challenge the state court's

2  habeas denial is without merit.

3  Regarding appellate counsel's failure to raise on appeal the claim of Apprendi error in

4  Ground Four, petitioner is not entitled to any relief.  As explained in the analysis of Ground Four,

5  the rule in Apprendi is inapplicable to petitioner's case given that he was sentenced pursuant to

6  a plea agreement.  Accordingly, appellate counsel could not have performed deficiently in failing

7  to assert an Apprendi challenge as such an argument would have been futile.  See Boag, 769 F.2d

8  at 1344.

9  Lastly, petitioner has not demonstrated that his appellate counsel was ineffective for failing

10  to raise on appeal the claims of ineffective assistance of trial counsel set forth in Ground Five.  As

11  discussed supra, petitioner has not shown that his trial counsel was ineffective for advising him

12  to plead to the gang allegation, or for failing to challenge the use of a prior conviction as a

13  sentence enhancement.  In turn, petitioner cannot show that his appellate counsel was ineffective

14  for omitting such claims in the direct appeal.

15  Accordingly, the state courts' denial of this claim was not contrary to Supreme Court

16  precedent.  Richter, 562 U.S. at 101-03.  No habeas relief is warranted for Ground Seven.[11] [12]

17

18  [11]   In petitioner's Supplemental Reply, he asserts a new claim:  that the trial court violated his due process rights when sentencing him to a five year term pursuant to California Penal Code

19  § 667(a).  Petitioner's attempt to raise a new claim in a Supplemental Reply is improper.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper

20  pleading to raise additional grounds for relief."); see also Rule 2(c)(1) of Rules Governing Section 2254 Cases (habeas petition must "specify all the grounds for relief available to the petitioner").

21  Moreover, there is no indication that petitioner has exhausted his available state remedies by presenting the new claim in the California Supreme Court.  Nevertheless, because the new claim

22  is without merit, the Court exercises its discretion to consider the new claim and reject it for the following reasons.  First, a misapplication of state sentencing law is not a basis for federal habeas

23  relief.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  In any event, a review of the record shows that petitioner properly received a five year term pursuant to California Penal Code

24  § 667(a) because he admitted a prior serious felony and was convicted of a serious felony.  See

25  Cal. Penal Code § 667(a)(1) (any person convicted of a serious felony who previously has been convicted of a serious felony shall receive a five-year enhancement); People v. Briceno, 34 Cal.4th

26  451, 464 (2004) (the definition of "serious felony" includes any felony offense that is committed

27  for the benefit of a criminal street gang under Cal. Penal Code § 186.22(b)(1)).  Petitioner has failed to show any sentencing error, let alone any due process violation.  See Christian v. Rhode,

28  (continued...)

**VI.**

**RECOMMENDATION**

It is recommended that the District Court issue an Order: (1) accepting this Final Report and Recommendation; and (2) directing that judgment be entered denying the Petition and dismissing this action with prejudice.

*Paul L. Abrams*

DATED: October 20, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11](...continued)
41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.").

[12]   The Report and Recommendation was issued on September 1, 2015. On October 13, 2015, petitioner filed Objections. In his Objections, petitioner asserts that his plea was invalid because his trial counsel failed to investigate the confession of Trajon Thomas (who was riding in the Tahoe with petitioner), in which Thomas stated that petitioner had no knowledge of the stolen nature of the computers. According to petitioner, he would have likely succeeded at trial based on this evidence. (Objections at 2-3). It does not appear that petitioner raised this specific claim in his Petition. However, given petitioner's pro se status, the Court exercises its discretion to consider and address petitioner's argument presented for the first time in the Objections. See Sossa v. Diaz, 729 F.3d 1225, 1231 (9th Cir. 2013) ("We have repeatedly held that in certain circumstances a district court abuses its discretion when it fails to consider new arguments or evidence proffered by a *pro se* habeas petitioner . . . in objecting to a magistrate judge's R&R."); Brown v. Roe, 279 F.3d 742, 744-45 (9th Cir. 2002). After reviewing the record, the Court concludes that petitioner's challenge to his plea lacks merit. First, petitioner has not submitted any objective evidence concerning Thomas' purported confession. In any event, petitioner's argument that the evidence of Thomas' confession would have demonstrated his innocence at trial is purely speculative in nature. Under the circumstances of this case, even if petitioner were able to put on evidence that a fellow gang member riding with him in the Tahoe took full blame for the stolen property, there is no reasonable likelihood that a jury would have determined that petitioner was not guilty. Accordingly, petitioner has not shown that his counsel's purported advice to plead no contest amounted to deficient performance given that petitioner was facing a sentence of twenty-five years to life if the jury rendered a guilty verdict. In turn, petitioner has failed to demonstrate that his counsel's failure to investigate Thomas' confession rendered his plea invalid.

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.